IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 3:23-CR-36-TAV-DCP |
| | ) | |
| MARCELUS PHILLIPS, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This case is before the undersigned for report and recommendation on the Motion by Defendant Marcelus Phillips to Suppress the Search of 230 Love Road, Sevierville and All Evidence Obtained as a Result [Doc. 36], filed on June 16, 2023. *See* 28 U.S.C. § 636(b). Defendant, who is charged with conspiring to distribute drugs and launder the proceeds and with possession of a firearm in furtherance of drug trafficking, challenges the search of the residence, where he was an overnight guest, on Fourth Amendment grounds [*Id.*].

On June 28, 2019, Investigator Donnie Mashburn, of the Sevier County Sheriff's Office ("SCSO") applied for a search warrant for 230 Love Road, Sevierville, Tennessee ("the residence"), which is the residence of Jessica McClure. Sevier County Circuit Judge Carter S. Moore issued a search warrant for the residence that day. Officers, including Investigator Mashburn, executed the search warrant later that day and seized controlled substances, currency, drug paraphernalia, digital scales, cellular telephones, and firearms.

Defendant seeks to suppress all evidence seized during the search of the residence and statements by Jessica McClure made during the search. He contends that Investigator Mashburn's affidavit submitted in support of the search warrant fails to provide probable cause for the

warrant's issuance because it does not establish the reliability of the confidential informant or a nexus between the residence and drug trafficking. He also requests a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), arguing the affidavit contains deliberately or recklessly false statements or material omissions that are necessary to probable cause.

For the reasons discussed below, the Court finds the affidavit in support of the search warrant provides probable cause for the search of the residence; Defendant has not met the threshold for a *Franks* hearing; and the executing officers acted in good faith. Accordingly, the Court respectfully recommends that Defendant's Motion to Suppress [Doc. 36] be denied.

## I. BACKGROUND AND SUMMARY OF THE EVIDENCE

Defendant Phillips is charged along with Defendants Cory Simms, Jaylin Redmond, and Corey Foster, other redacted named defendants, and unnamed others with conspiring to distribute fentanyl, heroin, and hydromorphone from March 15, 2018, through March 15, 2023 (Count One) [Doc. 3 pp. 1–2 (SEALED); Doc. 76 pp. 1–2 (redacted)]. Defendant Phillips is also charged with conspiring to commit money laundering during this same time period (Count Two) [Doc. 3 pp. 2–3 (SEALED); Doc. 76 pp. 2–3 (redacted)]. Finally, Defendant Phillips is charged with possession of firearms in furtherance of a drug trafficking crime on June 28, 2019 (Count Three) [Doc. 3 pp. 3 (SEALED); Doc. 76 pp. 3 (redacted)]. Defendant's Motion to Suppress arises in part out of the execution of a search warrant at 230 Love Road, Sevierville, Tennessee, on June 28, 2019. Defendant contends [Doc. 36 pp. 5–6] and the Government does not contest [Doc. 38 p. 3] that he was an overnight guest at the residence.

On June 28, 2019, SCSO Investigator Donnie Mashburn presented a five-and-one-half-page affidavit in support of an application to search the residence [Doc. 36-1 pp. 3–8[1]]. The affidavit states that beginning in June 2019, officers arranged and participated in four undercover drug transactions, two of which "involved the purchase of illegal narcotics from inside the home" [*Id*. at 4]. The affidavit then describes two controlled drug purchases from Jessica McClure, a resident of the residence, by a confidential informant ("CI-1") [*Id*. at 4–5].

According to the affidavit, the first controlled purchase occurred on June 13, 2019, when CI-1 called McClure and arranged to purchase K8 Dilaudid from McClure for $40 in the Walmart parking lot [*Id*. at 4]. An officer surveilling the residence saw McClure get in a vehicle and followed her to the Walmart parking lot [*Id*.]. Upon her arrival in the Walmart parking lot, McClure appeared to conduct a drug transaction with the occupant of another vehicle [*Id*.]. McClure then contacted CI-1, who entered McClure's vehicle, which was also occupied by McClure's mother and brother [*Id*.]. CI-1 gave McClure $40 in marked funds and received one K8 Dilaudid pill from McClure [*Id*.]. CI-1 provided the pill and an audio recorder to Investigator Mashburn [*Id*.]. Investigator Mashburn noted that this was the second time he had purchased drugs from McClure during this operation and that drugs have been purchased from McClure in "multiple other operations" [*Id*.].

The affidavit relates that the second controlled purchase occurred on June 26, 2019, when CI-1, the same confidential informant, purchased K8 Dilaudid hydromorphone from McClure "at **230 Love Road, Sevierville, Sevier County, Tennessee**" [*Id*. at 5 (emphasis in original)]. On

---

[1] Investigator Mashburn's affidavit does not have page or paragraph numbers, so the Court will cite to the page numbers of the attachment to Defendant's motion. Also, the entire affidavit is written in all capital letters. For ease of review, the undersigned will quote passages from the affidavit in upper and lower case letters, using bold type for emphasis where words appear in bold in the affidavit.

3

that date, CI-1 called McClure, who arranged to meet with CI-1 at Popcorn Video in Sevierville for the sale of one pill [*Id.*]. Officers surveilling McClure's residence saw her enter a vehicle and followed McClure to the Popcorn Video [*Id.*]. CI-1 got in the front passenger's seat of McClure's vehicle and gave her $40 in marked funds [*Id.*]. McClure gave CI-1 a single, "small" K8 Dilaudid pill [*Id.*]. After CI-1 exited McClure's vehicle, officers followed McClure directly back to the residence, where they observed several black males, whom they knew to be "D Boys" from their training and experience [*Id.*]. Investigator Mashburn retrieved the pill and the audio recording device from CI-1 and determined this was the fourth time purchasing drugs from McClure during this operation and "the second time [officers] had observed her delivering from the residence" [*Id.*].

Investigator Mashburn averred that based on this information, namely "the fact that two separate transactions have occurred at this particular residence involving multiple different parties, that various controlled substances are stored and possessed in said residence for resale" [*Id.*]. He stated that based upon his training and experience, including participation in state and federal drug investigations, he knows that drug dealers maintain contraband, proceeds, firearms, and records relating to drug trafficking at their own residences or other locations they control or to which they have access [*Id.* at 6–7]. In his affidavit, Investigator Mashburn concludes that probable cause exists to believe additional controlled substances and related items will be found in the residence [*Id.* at 8].

Defendant Phillips moved [Doc. 36] to suppress the evidence seized from the search of the residence and statements to law enforcement made by Jessica McClure during the search [Doc. 36 p. 1]. The parties appeared before the undersigned on July 26, 2023, for a hearing on the motion.

4

Assistant United States Attorney Brent Nelson Jones appeared on behalf of the Government. Attorney Mark E. Brown represented Defendant Phillips, who was also present.

AUSA Jones proffered[2] that Investigator Mashburn spoke with Ms. McClure after the search, that Ms. McClure cooperated with Investigator Mashburn, and that Investigator Mashburn did not ask for her consent to search the residence because he had a search warrant. The parties relied on the copy of the search warrant and affidavit attached to Defendant's motion. The Court heard the arguments presented by the parties and took the motion under advisement at the conclusion of the hearing.

## II.     ANALYSIS

The Fourth Amendment protects the right to be free from unreasonable searches and seizures. In this respect, a judge shall not issue a warrant for the search of a person, home, or personal property except upon a finding of "probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Defendant argues that his Fourth Amendment rights were violated because the affidavit in support of the search warrant failed to establish probable cause for its issuance. He raises three issues with probable cause: (1) the affidavit does not demonstrate the reliability of the confidential informant, (2) it fails to provide a nexus between the residence and drug trafficking, and (3) the affiant made deliberately or recklessly false statements and material omissions that were essential to the issuing judge's probable cause finding. The Government contends the affidavit properly provides probable cause for a search warrant, it does not contain deliberately or

---

[2]     The Government sought to call Investigator Mashburn to testify about the affidavit and the execution of the search warrant. The Court declined to permit this witness, given the issues raised, but permitted the Government to proffer information relating to the execution of the search warrant.

5

recklessly false statements, and the officers executing the search warrant relied on the warrant in good faith.

The undersigned has examined the issues raised by the parties and concludes that Investigator Mashburn's affidavit provides probable cause for a search warrant for the residence, Defendant has failed to demonstrate that a *Franks* hearing is warranted, and the executing officers acted in good faith reliance on the search warrant.[3]

### A. Sufficiency of Search Warrant

A search warrant issued in compliance with the Fourth Amendment must be based on "particularized facts" that demonstrate "'a fair probability that evidence of a crime will be located on the premises of the proposed search.'" *United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006) (quoting *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005)). Here, Defendant Phillips contends that Investigator Mashburn's affidavit failed to provide probable cause for three reasons: (1) the information from the confidential informant was not sufficiently reliable, (2) the affidavit fails to establish a nexus between the residence and the alleged crimes, and (3) the affidavit contains a false statement or material omission that is necessary to probable cause.

---

[3] To successfully bring a Fourth Amendment claim, there must be a legitimate expectation of privacy in the place searched or the thing seized. *Rakas v. Illinois*, 439 U.S. 128, 143 (1978). "[S]tanding is 'an element' of a Fourth Amendment suppression claim" and a "defendant bears the 'burden' of showing he has standing," which is "shorthand" for demonstrating that a search or seizure infringed upon the party's own rights. *United States v. Russell*, 26 F.4th 371, 374–75 (6th Cir.), *cert. denied*, 143 S. Ct. 385 (2022). An overnight social guest "has a reasonable expectation of privacy in the place where he sleeps at night." *United States v. Allen*, 720 F. App'x 254, 257 (6th Cir. 2018) (citing *Minnesota v. Oleson*, 495 U.S. 91, 96-97 (1990)). Defendant Phillips alleges that he was an overnight guest in the residence and had a bedroom there [Doc. 36 p. 5]. The Government does not contest Defendant's standing [Doc. 38 p. 3]. The undersigned finds Defendant has standing to challenge the search of the residence as an overnight guest at the residence.

An issuing judge's determination that probable cause exists is entitled to "'great deference.'" *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)). This deferential standard promotes a preference for the use of search warrants as opposed to warrantless searches. *Id.* "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. The "duty of a reviewing court is simply to ensure that the magistrate [judge] had a substantial basis for concluding that probable cause existed." *Id.* at 238-39. In making this determination, the Court considers only the information that was before the issuing judge—in other words, only what is contained within the four corners of the supporting affidavit. *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010); *see also Whiteley v. Warden*, 401 U.S. 560, 565 n.8 (1971).

Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Gates*, 462 U.S. at 244 n.13. Thus, the Supreme Court has observed that "probable cause is a flexible, common-sense standard," causing a person "of reasonable caution" to believe that the items are evidence of a crime. *Texas v. Brown*, 460 U.S. 730, 742 (1983). In other words, probable cause is "reasonable grounds for belief supported by less than prima facie proof but more than mere suspicion." *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). Whether probable cause to issue a search warrant exists is evaluated by looking at the totality of the circumstances. *Gates*, 462 U.S. at 238. With these principles in mind, the Court turns to the search warrant in this case.

7

## 1. Reliability of Confidential Informant

Defendant argues that Investigator Mashburn's affidavit fails to show the reliability, veracity, and basis of knowledge of the confidential informant [Doc. 36 p. 7]. He asserts that that affidavit does not disclose CI-1's name or whether he or she provided reliable information in the past or had prior dealings with the SCSO [*Id*.]. Nor does the affidavit disclose CI-1's motivation and criminal history [*Id*.]. Defendant maintains the affidavit fails to reveal that CI-1 had ever been to or inside the residence [*Id*.]. Finally, Defendant contends that the affidavit fails to corroborate any information by CI-1 [*Id*.].

If probable cause to issue a search warrant is gained from information provided by a confidential source, the issuing judge must have a basis for finding that the source is reliable or credible and was in a position to know the information provided. *United States v. Dyer*, 580 F.3d 386, 390 (6th Cir. 2009); *see also Gates*, 462 U.S. at 233 (holding that a confidential informant's reliability and basis of knowledge are "relevant considerations in the totality-of-the-circumstances analysis"); *Allen*, 211 F.3d at 972-73. An informant's veracity or reliability and basis of knowledge are not rigid categories. *Id.* Instead, deficiencies in one aspect can be made up by a strong showing in the other. *Gates*, 462 U.S. at 232-33; *Allen*, 211 F.2d at 981.

Additionally, an affidavit that gives little information on an informant's past reliability may still establish the informant is reliable by independent corroboration of the informant's information. *United States v. Coffee*, 434 F.3d 887, 893 (6th Cir. 2006) (determining a controlled buy provided independent corroboration of informant). "While independent corroboration of a confidential informant's story is not a *sine qua non* to a finding of probable cause, . . . in the absence of any indicia of the informant's reliability, courts insist that the affidavit contain

substantial independent police corroboration." *United States v. Frazier*, 423 F.3d 526, 532 (6th Cir. 2005) (citations omitted).

Here, Defendant is correct that the affidavit lacks independent information on the CI-1's veracity, such as information that the source previously provided reliable information to law enforcement. However, the affidavit does provide some general indication that CI-1 had previous dealings with Jessica McClure because the affidavit relates that CI-1 told officers that he or she could purchase Dilaudid from McClure for $40 per pill at a predetermined location [Doc. 36-1 p. 4].

The main support for the reliability of CI-1's information is the officers' corroboration of information from the source by conducting two controlled drug purchases. In both purchases, which were recorded and surveilled by officers, CI-1 first contacted McClure and arranged to purchase drugs at a specific location (the Walmart parking lot and Popcorn Video) [*Id*. at 4–5]. After being searched by officers and provided $40 in marked funds, the CI-1 met McClure at the prearranged location and obtained one Dilaudid pill for $40, the agreed amount [*Id*.]. CI-1 then provided the pill and the recording device to Investigator Mashburn, who confirmed that like on previous occasions, CI-1 had purchased drugs from McClure. An "affidavit need not include . . . attestations [of the informant's reliability] if it sufficiently details a controlled buy that supports the informant's credibility." *United States v. Moore*, 999 F.3d 993, 998 (6th Cir. 2021) (observing numerous cases hold "a confidential informant's credibility can be corroborated with a controlled buy") (collecting cases); *United States v. Jackson*, 470 F.3d 299, 307–08 (6th Cir. 2006) (finding that officer's monitoring of recording and visual surveillance of controlled buy, search of the informant before the buy, provision of marked funds, and immediate meeting with informant after controlled buy was sufficient corroboration of informant's reliability). Here, the two controlled

buys provide substantial independent police corroboration of CI-1's information that McClure sold controlled substances.

### 2. Nexus

Defendant also argues that the affidavit fails to provide a nexus between the Love Road residence and evidence of drug trafficking [Doc. 36 p. 7]. In this regard, he argues that neither law enforcement, nor the confidential informant observed any drug transactions at the residence [*Id*. at 8–9 (noting both controlled buys occurred away from the residence]. He denies that the Court should infer that McClure brought the pills sold in the controlled buys from her residence to the location of the transactions, arguing that she could have had the pills in her vehicle or, in the case of the first controlled buy, obtained the pill in the initial transaction law enforcement observed [*Id*. at 9–10]. Moreover, Defendant asserts that the homeowner's status as a drug dealer alone is insufficient to establish a nexus to the residence [*Id*. at 7–8]. Defendant contends that, instead, the affidavit must provide facts showing the residence has been used for drug trafficking, which he contends the affidavit fails to do [*Id*. at 8–10].

"To justify a search, the circumstances must indicate why evidence of illegal activity will be found 'in a particular place.'" *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (*en banc*). Probable cause requires a "'nexus between the place to be searched and the evidence sought.'" *Id.* (quoting *United States v. Van Shutters*, 163 F.3d 331, 336–37 (6th Cir. 1998)). "The connection between the residence and the evidence of criminal activity must be specific and concrete, not 'vague' or 'generalized.'" *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016) (quoting *Carpenter*, 360 F.3d at 595). Assessing whether an affidavit establishes a nexus turns upon the facts of a particular case and requires examination of the totality of the circumstances. *Id.* The Court must determine "'whether the [issuing judge] had a substantial basis for finding that

the affidavit established probable cause to believe that the evidence would be found at the place cited.'" *United States v. Merriweather*, 728 F. App'x 498, 504 (6th Cir. 2018) (quoting *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991)).

A controlled purchase of illegal drugs from the seller's residence provides a sufficient nexus between the location and the suspected criminal activity. *Moore*, 999 F.3d at 998. "After all, it is not much of a leap to infer that a suspect who has sold drugs from his home in the days preceding the issuance of a warrant will have evidence of that sale in his home." *Id.* (citing *United States v. McCoy*, 905 F.3d 409, 417 (6th Cir. 2018)). Here, CI-1 purchased Dilaudid pills from McClure on two occasions in June 2019, but neither sale occurred at the residence. Instead, on both occasions, surveilling officers observed McClure leave the residence, followed her to the prearranged location for the drug transaction, and on the second occasion, followed her directly back to the residence [Doc. 36-1 pp. 4 -5].

The Court agrees that a person's status as a drug trafficker alone is insufficient to provide a nexus to search his or her home. *Brown*, 828 F.3d at 383. In addition to showing that the suspect was trafficking drugs and stayed at the residence, the affidavit must provide "evidence showing a connection between [the] alleged drug trafficking and the . . . property." *United States v. Sumlin*, 956 F.3d 879, 887 (6th Cir. 2020)). "[I]f the affidavit fails to include facts that directly connect the residence with the suspected drug dealing activity, or the evidence of this connection is unreliable, it cannot be inferred that drugs will be found in the defendant's home—even if the defendant is a known drug dealer." *Brown*, 828 F.3d at 384. The amount of additional evidence necessary for a nexus is "unsettled[,]" but evidence of drug transactions in or around the residence is sufficient. *United States v. Grant*, No. 21-3686, 2023 WL 119399, at *3 (6th Cir. Jan. 6, 2023) (citing *Brown*, 828 F.3d at 383).

11

Here, the affidavit relates that based upon Investigator Mashburn's training and experience, "[d]rug dealers very often will hide contraband, proceeds of drug sales and records of drug transactions in secure locations such as their own residences" [Doc. 36-1 p. 6]. Similarly, [d]rug dealers commonly have in their possession or in their residences and businesses firearms . . . to protect and secure their property, drugs and profits" [*Id*. at 7]. These statements based upon Investigator Mashburn's training and experience are only one factor in the totality of the circumstances.

The primary evidence of nexus comes from the controlled buys on June 13 and 26, 2019 [*See id*. at 4–5]. For both controlled buys, CI-1 called McClure to arrange the drug transaction [*Id*. at 4–5]. Additionally, for both controlled buys, law enforcement observed McClure enter her vehicle and followed her to the prearranged location [*Id*.]. After the second controlled buy, officers followed McClure's vehicle directly back to the residence after the drug transaction. This evidence of a "direct line" of travel from a residence to the site of a drug transaction as established by police surveillance can support a nexus between a residence and drug trafficking. *United States v. Brooks*, No. 1:22-cr-00679; 2023 WL 7130780, at *4 (N.D. Ohio Oct. 30, 2023) (finding codefendant's entry into vehicle used by him in a prior drug deal, traveling directly from the residence to the arranged location for the drug deal, and traveling directly back to the residence, where he parked in the driveway, was one fact linking the codefendant's drug dealing with the residence); *United States v. Miller*, 850 F. App'x 370, 374 (6th Cir. 2021); *see also United States v. Houser*, 752 F. App'x 223, 225–26 (6th Cir. 2018) (finding a nexus when the defendant engaged in drug transaction on the side of his apartment building then returned directly to his apartment); *United States v. Bucio-Cabrales*, 635 F. App'x 324, 334 (6th Cir. 2016) (finding surveilling officers twice observed defendant traveling directly from his apartment to a drug transaction and this gave rise

12

to a "reasonable *inference*" that defendant was using the apartment for drug trafficking); *United States v. Gunther*, 266 F. App'x 415, 419 (6th Cir. 2008) (determining that police surveillance of defendant going to his residence before going to site of drug transaction "provided a neutral magistrate with a substantial basis to conclude that [d]efendant may have stopped at his residence to pick up some of his merchandise before meeting his customer at another location").[4]  In *Brooks*, the court observed that "the very evidence that was lacking in *Brown*—surveillance of the defendant transporting drugs in his car to a drug buy location—is present here."  2023 WL 7130780, at * 5.

The affidavit also relates that Investigator Mashburn was involved in two additional controlled buys with McClure in this "operation" [Doc. 36-1 pp. 4-5].  Additionally, Investigator Mashburn has "purchased drugs from Ms. McClure [i]n multiple other operations" [*Id*. at 4; *see also Id*. at 5 (determining that the second controlled buy was the "fourth time [Investigator Mashburn] had purchased drugs from Mrs. [sic] McClure during [the] current operation[,]" and he has placed her at the scene of drug sales in "multiple prior operations")].  Repeated drug transactions allow the Court to infer a nexus between a drug dealer and his or her residence.  *Brooks*, 2023 WL 7130780, at *5 (finding four controlled buys away from the residence were evidence of "ongoing drug trafficking" (quoting *Gunter*, 551 F.3d at 481)).

---

[4]    A panel of the Sixth Circuit found that the defendant's travel between an apartment and drug transactions on two occasions did not provide a nexus between the apartment and drug trafficking, where the affidavit failed to establish the defendant lived at the apartment and the officers did not see the defendant carry a bag from the apartment to his vehicle.  *United States v. Sanders*, 59 F.4th 232, 240–42 (6th Cir. 2023), *vacated by* 68 F.4th 1030 (6th Cir. 2023).  The Sixth Circuit subsequently granted a rehearing en banc in this case, which serves to vacate the previous decision.  *United States v. Sanders*, 68 F.4th 1030 (6th Cir. 2023).  In addition to no longer being controlling precedent, the vacated opinion in *Sanders* is distinguished from this case by the evidence that Jessica McClure was a resident of 280 Love Road and by McClure's numerous, ongoing drug transactions which were known by Investigator Mashburn.

13

Here, the Court finds the totality of the circumstances, including the two drug transactions occurring directly after McClure left the residence, Investigator Mashburn's knowledge of McClure's numerous instances of drug trafficking, and his training and experience that drug dealers keep drugs, proceeds, records of drug trafficking, and firearms in their residences, provide specific and concrete evidence connecting the residence to drug trafficking. *See Brown*, 828 F.3d at 382. Accordingly, the undersigned finds the affidavit provides a nexus to the residence.

### 3. Franks Challenge

Defendant also argues that Investigator Mashburn's affidavit contains omissions and false statements, which the affiant made or omitted with a reckless disregard for the truth [Doc. 36 pp. 10–11]. Specifically, he contends that the affidavit references multiple other drug purchases from Jessica McClure but omits the details of those transactions [*Id*. at 11]. He argues these omissions are material because the multiple allegations of controlled buys show a pattern of drug trafficking with no information on whether the other buys, if they occurred, were tied to the residence [*Id*. at 11–12]. He also argues that the affidavit falsely states that controlled buys occurred inside the Love Road residence [*Id*. at 12]. Defendant argues that a *Franks* hearing is warranted because these omissions and false statements could have misled the issuing judge [*Id*.].

As discussed above, the reviewing court's evaluation of whether an affidavit establishes probable cause is typically limited to only the information that was before the issuing judge, *i.e.*, only what is contained within the four corners of the supporting affidavit. *Brooks*, 594 F.3d at 492. "In a *Franks* hearing, a court determines whether to suppress the fruits of an executed search warrant, where the warrant was the result of a false statement." *United States v. Crawford*, 943 F.3d 297, 309 (6th Cir. 2019) (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978)). "A defendant challenging the validity of a search warrant's affidavit bears a heavy burden." *United States v.*

*Bateman*, 945 F.3d 997, 1008 (6th Cir. 2019). The affidavit supporting a search warrant is presumed to be valid. *Franks*, 438 U.S. at 171. A defendant seeking a *Franks* hearing, "must make a 'substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit.'" *Crawford*, 943 F.3d at 309 (quoting *Franks*, 438 U.S. at 171). The defendant must make a substantial showing of the affiant's culpability, *i.e.*, that the affiant deliberately or recklessly made the false statement. *Butler v. City of Detroit*, 936 F.3d 410, 418 (6th Cir. 2019). An officer's statement is only considered to be issued with "reckless disregard for the truth" if the defendant shows the affiant subjectively entertained "serious doubts as to the truth" of his allegations. *Bateman*, 945 F.3d at 1008 (6th Cir. 2019). "Allegations of [an officer's] negligence or innocent mistake are insufficient." *Franks*, 438 U.S. at 171. "'The allegedly false statement,' moreover, must be 'necessary to the finding of probable cause.'" *Crawford*, 943 F.3d at 309.

Material omissions may also merit a *Franks* hearing in certain circumstances; however, "an affidavit which omits potentially exculpatory information is less likely to present a question of impermissible official conduct than one which affirmatively includes false information." *United States v. Adkins*, 107 F.3d 1213, 1217 (6th Cir. 1997). An affidavit does not have to include all facts gathered during the investigation. *Id.* Thus, "except in the very rare case where the defendant makes a strong preliminary showing that the affiant with an intention to mislead excluded critical information from the affidavit, and the omission is critical to the finding of probable cause, *Franks* is inapplicable to the omission of disputed facts." *Mays v. City of Dayton*, 134 F.3d 809, 816 (6th Cir. 1998). The purpose of this heightened standard for omissions is to prevent "'endless conjecture about investigative leads, fragments of information, or other matter that might, if included, have redounded to defendant's benefit.'" *United States v. Martin*, 920 F.2d 393, 398

(6th Cir. 1990) (quoting *United States v. Colkley*, 899 F.2d 297, 301 (4th Cir. 1990)). "If the defendant does succeed in making a preliminary showing that the government affiant engaged in 'deliberate falsehood' or 'reckless disregard for the truth' in omitting information from the affidavit, the court must then consider the affidavit including the omitted portions and determine whether probable cause still exists." *Adkins*, 107 F.3d at 1217.

Defendant argues that the affidavit states that law enforcement arranged four controlled buys with Jessica McClure during the current investigation [*See* Doc. 36-1 p. 4]. The controlled buy on June 13, 2019 ("Buy 1"), is stated to be "the second time [Investigator Mashburn] had purchase[d] drugs from Mrs. McClure during this operation" [*Id*.]. The controlled buy on June 26, 2023 ("Buy 2"), is stated to be "the fourth time [Investigator Mashburn] had purchased drugs from Mrs. McClure during a current operation" [*Id*. at 5]. Defendant argues that the omission of the details of the other two controlled buys is material to probable cause because they allow the issuing judge to infer a pattern of drug trafficking unconnected to the residence. The Court agrees that such an inference can be drawn from the other two controlled buys but does not find that such inference is misleading as to probable cause. First, the affidavit states that these other two controlled buys were not connected to the residence. With regard to Buy 2, the affidavit relates that this was the second time officers observed McClure coming from the residence to the location of the controlled buy [*Id*.]. The first time the officers observed McClure traveling from the residence to the controlled buy was in Buy 1 [*See Id*. at 4]. Defendant fails to show how omission of the details of McClure's other instances of drug trafficking was misleading to the issuing judge.

More significantly, the affidavit states in three places that drugs were purchased inside the Love Road residence: (1) in the heading above Buy 1 [*Id*. at 4 ("a total of four (4) undercover drug operations which involved the purchase of illegal narcotics from inside the home on two

occasions")], (2) in the heading of Buy 2 [*Id*. at 5 (CI-1 "purchased Schedule II K8 Dilaudid hydromorphone from Jessica Ann McClure, alias, **at 230 Love Road**") (emphasis in original)], and (3) in the concluding sentence following Buy 2 [*Id*. ("Your affiant believes, based on the above information, the fact that two separate transactions have occurred at this particular residence involving multiple different parties, that various controlled substances are stored and possessed in said residence for resale.")].  At the motion hearing, AUSA Jones conceded that none of the controlled buys occurred at or inside the residence.  He attributed these statements to "inartful draft[ing]" and argued any reckless or deliberate intent is belied by the fact that the descriptions of the two controlled buys clearly state that they occurred away from the residence at the Walmart parking lot and Popcorn Video.  AUSA Jones also argued that if these three statements are omitted, the affidavit still contains probable cause for the issuance of the search warrant based upon law enforcement's surveillance of McClure traveling from the residence to Buys 1 and 2 and from Buy 2 back to the residence.

"An officer's negligent or accidental inclusion of false statements in an affidavit is insufficient to justify a *Franks* hearing or the striking of statements."  *United States v. Pointer*, No. 22-1082, 2022 WL 17820539, at *8 (6th Cir. Dec. 20, 2022); *see also United States v. Booker*, No. 3:18-cr-00250, 2020 WL 2733727, at *5 (M.D. Tenn. May 26, 2020) ("'[A] little negligence— actually even a lot of negligence—does not the need for a *Franks* hearing make.'" (quoting *United States v. Swanson*, 210 F.3d 788, 791 (7th Cir. 2000))).  Here, Defendant fails to carry his burden of demonstrating that Investigator Mashburn deliberately or recklessly attempted to mislead the issuing judge.  Any such inference is contradicted by the details of Buys 1 and 2 included in the affidavit.  *See United States v. Stewart*, No. 3:19-CR-151-TAV-DCP-2, 2021 WL 2408168, at *6 (E.D. Tenn. Jan. 12, 2021) (determining erroneous telephone number in affidavit was an occasion

17

of negligence not meriting a *Franks* hearing, particularly when affidavit identified participants in each intercepted conversation), *report and recommendation adopted by* 2021 WL 1922934 (E.D. Tenn. May 13, 2021). Moreover, if the erroneous and conclusory statements are stricken from the two headings and the concluding sentence, the affidavit still includes all the information providing probable cause discussed in the preceding sections.[5]

In summary, the undersigned finds that Defendant fails to carry his burden of showing the affidavit contains a material omission or deliberately or recklessly false statements that are necessary to probable cause. Defendant's request that the evidence be suppressed on this basis must be denied.

### B. Good Faith Exception

"Under the good-faith exception, evidence 'seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective' will not be suppressed." *United States v. Neal*, No. 2:22-cv-20083-JPM-1, 2023 WL 1107895, at *1 (W.D. Tenn. Jan. 30, 2023) (quoting *United States v. Leon*, 468 U.S. 897, 905 (1984)); *see also United States v. Herring*, 555 U.S. 135, 141–42 (2009) (rejecting automatic exclusion of evidence and, instead, asking whether exclusion will provide "appreciable deterrence"). The reason for the good-faith exception is because "'[p]enalizing the officer for the [judge's] error, rather than his own, cannot logically contribute

---

[5] Although not mentioned by the parties, the final sentence of the affidavit states "[b]ased upon the foregoing information, I believe there is probable cause to believe that there is more methamphetamine and other controlled substances and other associated items in the residence . . . ." [Doc. 36-1 p. 8]. This is the sole reference to methamphetamine in the affidavit. To the extent that this reference to methamphetamine could be considered a false statement, the Court finds the same analysis applies. There is no showing that it is a deliberate or recklessly false statement, and probable cause to search for controlled substances remains if the words "more methamphetamine" are stricken from the affidavit.

18

to the deterrence of Fourth Amendment violations.'" *United States v. White*, 874 F.3d 490, 505–06 (6th Cir. 2017) (quoting *Leon*, 468 U.S. at 921).

The "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well[-]trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n.23. "'Some modicum of evidence, however slight[, ]between the criminal activity at issue and the place to be searched'" will support an officer's good-faith belief in the existence of probable cause. *McCoy*, 905 F.3d at 416 (quoting *White*, 874 F.3d at 496). Thus, only when the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" will the search fall outside the good-faith exception and the evidence be suppressed.[6] *Neal*, 2023 WL 1107895, at *1 (quoting *Leon*, 468 U.S. at 923).

Here, the undersigned finds Investigator Mashburn's affidavit provided probable cause to support the issuance of the search warrant. Nevertheless, given the Sixth Circuit's intention to revisit the issue of nexus with regard to a drug trafficker's residence (*see* n.4 above), the Court briefly examines the good-faith exception. Here, even if the nexus between the residence and drug trafficking is deemed insufficient, suppression is not warranted because the executing officers relied on the search warrant in good faith.

Investigator Mashburn's five-and-one-half-page affidavit provided the executing officers with evidence of a connection between the Love Road residence and drug trafficking. Law

---

[6]     The good-faith exception is not available if the issuing judge "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *Leon*, 468 U.S. at 922. Here, the undersigned finds that the issuing judge was not misled by the three summary statements in the affidavit that transactions occurred inside the residence because of the details of the two controlled buys showing the transactions occurred away from the residence.

enforcement surveilling the residence observed the resident Jessica McClure leave the residence and travel directly to the prearranged locations for two controlled drug buys. Officers observed McClure travel directly back to the residence following the second controlled buy. CI-1 recorded both controlled buys and provided the recordings to Investigator Mashburn. The affidavit established that McClure was a known drug trafficker, who had engaged in numerous drug transactions beyond the four controlled buys noted in the affidavit.

These connections between drug activity and the residence, though limited, provide support for the executing officers' good-faith reliance on the search warrant. *See Neal*, 2023 WL 1107895, at *1 (W.D. Tenn. Jan. 30, 2023) (affirming application of the good-faith exception when the affidavit demonstrated defendant lived at the residence, surveilling officers observed a hand-to-hand transaction away from the residence between a confidential informant and an individual the informant identified as the defendant, and the defendant's vehicle was registered to the residence). Thus, if the affidavit is found to be deficient in probable cause, the evidence seized in the execution of the search warrant should not be suppressed.

## IV. CONCLUSION

After carefully considering the parties' arguments and the relevant legal authorities, the undersigned finds that law enforcement properly searched the Love Road residence pursuant to a valid search warrant. Accordingly, the undersigned respectfully **RECOMMENDS** that that the

Motion by the Defendant Marcelus Phillips to Suppress the Search of 230 Love Road, Sevierville

and All Evidence Obtained as a Result [Doc. 36] be denied.[7]

Respectfully submitted,

Debra C. Poplin
United States Magistrate Judge

---

[7] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to appeal the District Court's order. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 555 U.S. 1080 (2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). "[T]he district court need not provide *de novo* review where objections [to this report and recommendation] are [f]rivolous, conclusive, or general." *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (internal quotation omitted). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed. of Tchrs.*, 829 F.2d 1370, 1373 (6th Cir. 1987).

21