UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| UNITED STATES OF AMERICA, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | No.: 3:23-cr-36-TAV-DCP-3 |
| MARCELUS PHILLIPS, | ) |  |
| Defendant. | ) |  |

## MEMORANDUM OPINION AND ORDER

This criminal matter is before the Court for consideration of the Report and Recommendation ("R&R") entered by United States Magistrate Judge Debra C. Poplin on November 9, 2023 [Doc. 80], addressing defendant's Motion to Suppress [Doc. 36]. The government responded to the motion [Doc. 38], and Judge Poplin held a hearing on July 26, 2023 [Doc. 61]. Judge Poplin then issued the R&R [Doc. 80], recommending that the Court deny the Motion to Suppress [Doc. 36].

Defendant has filed objections to the R&R [Doc. 87], the government has responded [Doc. 93], and the matter is now ripe for the Court's review. *See* E.D. Tenn. L.R. 7.1(a). For the reasons that follow, the Court will **OVERRULE** defendant's objections [Doc. 87], **ACCEPT** and **ADOPT** the R&R [Doc. 80] in whole, and **DENY** the Motion to Suppress [Doc. 36].

### I. Background

Defendant and others are charged with conspiring to distribute fentanyl, heroin, and hydromorphone from March 15, 2018, through March 15, 2023 [Doc. 3, pp. 1–2].

Defendant is also charged with conspiring to commit money laundering during the same time period [*Id.* at 2–3]. Finally, defendant is charged with possession of firearms in furtherance of a drug trafficking crime on June 28, 2019 [*Id.* at 3].

The Court presumes familiarity with the facts of this case and will only recite facts necessary to the determination of the instant motion. As the parties do not appear to object to the R&R's factual findings, the Court will adopt the following facts from the R&R [Doc. 80, pp. 3–5].

Defendant's Motion to Suppress arises in part out of the execution of a search warrant at 230 Love Road, Sevierville, Tennessee (the "residence"), on June 28, 2019. On June 28, 2019, Sevier County Sheriff's Office ("SCSO") Investigator Donnie Mashburn presented a five-and-one-half page affidavit in support of an application to search the residence [Doc. 36-1, pp. 3–81].[1] The affidavit states that beginning in June 2019, officers arranged and participated in four undercover drug transactions, two of which "involved the purchase of illegal narcotics from inside the home" [*Id.* at 4]. The affidavit then describes two controlled drug purchases from Jessica McClure, who lived at the residence, by a confidential informant ("CI-1") [*Id.* at 4–5]. CI-1 advised officers that he or she could purchase K8 Dilaudid from McClure, that the pill would cost $40.00, and that he or she might need to meet McClure somewhere near a Walmart for the transaction [*Id.* at 4].

---

[1] The affidavit does not have page or paragraph numbers, so the Court will cite to the page numbers of the attachment to defendant's Motion to Suppress. Because the affidavit is written in all capital letters, for ease of review, this opinion will quote passages from the affidavit in upper- and lower-case letters, using bold type for emphasis where words appear in bold in the affidavit.

2

According to the affidavit, the first controlled purchase occurred on June 13, 2019, when CI-1 called McClure and arranged to purchase K8 Dilaudid from McClure for $40 in the Walmart parking lot [*Id.*]. An officer surveilling the residence saw McClure get in a vehicle and followed her to the Walmart parking lot. Upon her arrival to the Walmart parking lot, McClure appeared to conduct a drug transaction with the occupant of another vehicle. McClure then contacted CI-1, who entered McClure's vehicle, which was also occupied by McClure's mother and brother. CI-1 gave McClure $40 in marked funds and received one K8 Dilaudid pill from McClure. CI-1 provided the pill and an audio recorder to Investigator Mashburn. Investigator Mashburn noted that this was the second time he had purchased drugs from McClure during this operation and that drugs have been purchased from McClure in "multiple other operations" [*Id.*].

The affidavit relates that the second controlled purchase occurred on June 26, 2019, when CI-1 purchased K8 Dilaudid hydromorphone from McClure **"at 230 Love Road, Sevierville, Sevier County, Tennessee"** [*Id.* at 5 (emphasis in original)]. On that date, CI-1 called McClure, who arranged to meet with CI-1 at Popcorn Video in Sevierville for the sale of one pill. Officers surveilling McClure's residence saw her enter a vehicle and followed McClure to the Popcorn Video. CI-1 got in the front passenger's seat of McClure's vehicle and gave her $40 in marked funds. McClure gave CI-1 a single, "small" K8 Dilaudid pill. After CI-1 exited McClure's vehicle, officers followed McClure directly back to the residence, where they observed several male individuals, whom they knew to be "D Boys" from their training and experience. Investigator Mashburn retrieved the pill and the audio recording device from CI-1 and determined this was the fourth time

3

purchasing drugs from McClure during this operation and "the second time [officers] had observed her delivering from the residence" [*Id.*].

Investigator Mashburn averred that based on this information, namely "the fact that two separate transactions have occurred at this particular residence involving multiple different parties, that various controlled substances are stored and possessed in said residence for resale" [*Id.*]. He stated that based upon his training and experience, including participation in state and federal drug investigations, he knows that drug dealers maintain contraband, proceeds, firearms, and records relating to drug trafficking at their own residences or other locations they control or to which they have access [*Id.* at 6–7]. In his affidavit, Investigator Mashburn concludes that probable cause exists to believe additional controlled substances and related items will be found in the residence [*Id.* at 8].

In his motion to suppress, defendant raised the following two issues with probable cause that are relevant here: the affidavit fails to (1) demonstrate the reliability of the confidential informant and (2) provide a nexus between the residence and drug trafficking [Doc. 36].[2] After the suppression hearing, the magistrate judge issued the R&R, recommending that the Court deny defendant's Motion to Suppress [Doc. 80]. Specifically, she concluded the affidavit provided probable cause for a search warrant for

---

[2] Defendant also argued that the affidavit contained numerous false statements such that a *Franks* hearing was warranted [Doc. 36, pp. 10–11]. In the R&R, the magistrate judge found that defendant failed to carry his burden of showing the affidavit included a material omission or deliberate or reckless false statements necessary to support a finding of probable cause [Doc. 80, p. 18]. Defendant does not object to that finding [Doc. 87].

4

the residence and the executing officers acted in good faith reliance on the search warrant [*Id.* at 6].

As to probable cause, the magistrate judge first addressed defendant's arguments about the reliability of the confidential informant [*Id.* at 8]. While the magistrate judge agreed with defendant that the affidavit lacks independent information on CI-1's veracity, she recognized that it nonetheless provides "some general indication" that CI-1 had previous dealings with McClure [*Id.* at 9]. In particular, the magistrate judge noted that CI-1 told officers that he or she could purchase Dilaudid from McClure for $40 per pill at a predetermined location [*Id.* (citing Doc. 36-1, p. 4)]. However, the magistrate judge concluded that the two controlled drug purchases provide the "main support" and "substantial independent police corroboration" of CI-1's information about McClure's involvement in selling controlled substances [*Id.* at 9–10].

The magistrate judge then addressed defendant's arguments about nexus and found that the affidavit provides a nexus to the residence [*Id.* at 10–14]. She noted the statements in the affidavit about Investigator Mashburn's training and experience as one factor in the totality of the circumstances [*Id.* at 12]. She also recognized the statements in the affidavit relating that Investigator Mashburn was involved in two additional controlled buys with McClure in this "operation," and that he had purchased drugs from McClure in "multiple other operations" [*Id.* at 13 (citing Doc. 36-1, pp. 3–4)]. While the magistrate judge recognized that a person's status as a drug dealer, by itself, is insufficient to provide a nexus to search his or her residence, "[r]epeated drug transactions allow the Court to infer a nexus

5

between a drug dealer and his or her residence" [*Id.* at 11, 13 (citing *United States v. Brooks*, No. 1:22-cr-679, 2023 WL 7130780, at *4 (N.D. Ohio Oct. 30, 2023))].

The magistrate judge determined that the primary evidence of nexus, however, came from the two controlled buys [*Id.* at 12]. The magistrate judge recognized that the two controlled buys involving CI-1 did not occur at the residence; rather, on both occasions, officers observed McClure leave the residence and followed her to the prearranged location where the drug transactions occurred [*Id.* at 11 (citing Doc. 36-1, pp. 4–5)]. On the second occasion, officers followed her directly back to the residence [*Id.*]. Relying on Sixth Circuit case law, the magistrate judge concluded that such "direct line" of travel from a residence to the site of a drug transaction can support nexus [*Id.* at 12–13 (collecting cases)].

Finally, the magistrate judge concluded that, even if the nexus between the residence and drug trafficking were insufficient, suppression is not warranted because the executing officers relied on the warrant in good faith [*Id.* at 19]. The magistrate judge specifically found that the affidavit provided executing officers with evidence of a connection between the residence and drug trafficking [*Id.*]. The R&R provided, in pertinent part:

> Law enforcement surveilling the residence observed the resident Jessica McClure leave the residence and travel directly to the prearranged locations for two controlled drug buys. Officers observed McClure travel directly back to the residence following the second controlled buy. CI-1 recorded both controlled buys and provided the recordings to Investigator Mashburn. The affidavit established that McClure was a known drug trafficker, who had engaged in numerous drug transactions beyond the four controlled buys noted in the affidavit.
>
> These connections between drug activity and the residence, though limited, provide support for the executing officers' good-faith reliance on the search

warrant. [*See United States v. Neal*, No. 2:22-cv-20083, 2023 WL 1107895, at *1 (W.D. Tenn. Jan. 30, 2023)] (affirming application of the good-faith exception when the affidavit demonstrated defendant lived at the residence, surveilling officers observed a hand-to-hand transaction away from the residence between a confidential informant and an individual the informant identified as the defendant, and the defendant's vehicle was registered to the residence).

[*Id.* at 19–20] (internal citation modified).

## II. Standard of Review

The Court reviews *de novo* those portions of the R&R to which a defendant has objected. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b). Accordingly, the Court considers the R&R, the Motion to Suppress, the parties' underlying and supporting briefs, defendant's objections, and the government's response to those objections, all in light of the applicable law.

Objections to any part of a magistrate judge's disposition "must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *See Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995); *see also Thomas v. Arn*, 474 U.S. 140, 147 (1985) (stating that the purpose of the rule is to "focus attention on those issues . . . that are at the heart of the parties' dispute"). Each objection to a magistrate judge's recommendation should describe how the analysis is wrong, why it was wrong, and how *de novo* review would yield a different result on that particular issue. *See Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). A general objection, or one that merely restates arguments previously presented and addressed by the magistrate judge, does not sufficiently identify alleged errors in a report and recommendation. *See id.*

7

### III. Analysis

Defendant raises three specific objections to the R&R. He objects to the magistrate judge's conclusions related to probable cause that the affidavit (1) provided independent corroboration of CI-1's reliability and (2) established a sufficient nexus between the residence and drug trafficking [Doc. 87, pp. 2, 5]. He also objects to the finding that the good faith exception to the exclusionary rule applies [*Id.* at 8].

#### A. Probable Cause

##### i. Reliability of Confidential Informant

Defendant maintains that the affidavit fails to provide independent information as to the reliability of CI-1 [*Id.* at 3–5]. In particular, he objects to the magistrate judge's conclusion that the two controlled buys provide substantial independent police corroboration of CI-1's tip that McClure sold controlled substances [*Id.* at 3 (citing Doc. 80, pp. 9–10)]. Defendant does not dispute the statement of law recited in the R&R that an "affidavit need not include . . . attestations [of the informant's reliability] if it sufficiently details a controlled buy that supports the informant's credibility" [*Id.* at 3 (citing Doc. 80, p. 9)]. However, he distinguishes the cases on which the R&R relies for such proposition, arguing that the confidential informants in those cases participated in controlled buys that occurred at the residence to be searched [*Id.* at 3–5]. Unlike those cases, defendant argues that the controlled buys in which CI-1 participated occurred at locations away from the residence [*Id.*].[3]

---

[3] The Court observes that this objection seems to overlap with defendant's next objection to the magistrate judge's conclusion as to nexus [Doc. 87, p. 6 (arguing that the magistrate judge's

8

When, as here, a warrant affidavit provides no indicia of an informant's reliability [Doc. 80, p. 9; Doc. 87, p. 3], "courts insist that the affidavit contain substantial independent police corroboration." *United States v. Frazier*, 423 F.3d 526, 532 (6th Cir. 2005). As the magistrate judge correctly recognized, such independent corroboration may be established by a police-monitored controlled buy, such as the two which occurred in this case, even though such controlled buys took place away from the residence. *See United States v. Moore*, 999 F.3d 993, 998 (6th Cir. 2021); *see also United States v. Gunter*, 266 F. App'x 415, 416, 417–18 (6th Cir. 2008) (finding the affidavit established the reliability of a confidential informant when the informant participated in controlled purchases away from the residence to be searched). "When an informant's statement contains a prediction about criminal behavior, such a prediction provides officers with an opportunity to 'test the informant's knowledge or credibility.'" *United States v. Howard*, 632 F. App'x 795, 804 (6th Cir. 2015) (quoting *Florida v. J.L.*, 529 U.S. 266, 271 (2000)). Because officers tested CI-1's knowledge and credibility about McClure's involvement in selling controlled substances through the two controlled buys, the Court discerns no error in the magistrate judge's conclusion about the reliability of the confidential informant. *See id.*

As the magistrate judge noted, the affidavit provides a general indication that CI-1 had previous dealings with McClure [Doc. 80, p. 9 (citing Doc. 36-1, p. 4)]. In particular, the affidavit states that CI-1 advised law enforcement that he or she could purchase K8 Dilaudid from McClure, that the pill would cost $40.00, and that he or she might need to

---

finding as to nexus "suffers from the same fatal flaw as the finding that the CI's credibility is bolstered by two controlled purchases")].

9

meet McClure near Walmart for the transaction [Doc. 36-1, p. 4]. CI-1 then worked with investigators to arrange and conduct two controlled buys [*Id.* at 4–5]. As the magistrate judge observed, both controlled purchases were recorded and surveilled by officers [Doc. 80, p. 9]. CI-1 contacted McClure and arranged to purchase drugs, first in the parking lot of a Walmart and second at Popcorn Video [Doc. 36-1, pp. 4–5]. CI-1 also was searched by Investigator Mashburn for contraband before and after each controlled purchase. After being searched and provided $40 in marked funds—the amount which CI-1 advised the pill would cost—CI-1 met McClure at the prearranged locations and obtained one Dilaudid pill for $40.00 in each controlled purchase [*Id.*]. In light of the applicable law, the Court finds the controlled buys provide "substantial independent police corroboration" of CI-1's tip that McClure was involved in selling controlled substances. *See Frazier*, 423 F.3d at 532.

That the controlled buys occurred away from the residence does not impact such finding. Though factually distinguishable, none of the cases cited by the magistrate judge stand for the proposition that a confidential informant participating in a controlled buy must have purchased drugs from the place to be searched before the informant can be deemed sufficiently reliable [Doc. 80, pp. 8–9]. *See Gunter*, 266 F. App'x at 416–18; *United States v. Cooper*, No. 08-20464, 2009 WL 1384145, at *3 (E.D. Mich. May 14, 2009) (finding the affidavit provided sufficient corroboration of the confidential informant's reliability where it described a controlled buy observed by law enforcement away from the residence to be searched). Aside from distinguishing the cases cited in the R&R, defendant has not otherwise pointed to legal authority supporting his argument that a confidential informant's

10

reliability must be established through a controlled buy that occurred in the place to be searched [Doc. 87, p. 3]. Defendant also has not demonstrated that the magistrate judge's conclusion, analysis of the relevant case law, or application of the law to the facts of this case is erroneous.

As a result, defendant's objections on this ground are **OVERRULED**.

      **ii.**      **Nexus**

Defendant next attacks the magistrate judge's finding that the affidavit establishes a sufficient nexus between drug trafficking and the residence because the controlled buys did not occur at the residence [*Id.* at 6]. Defendant contends it is "mere speculation" that the drugs came from the residence because there is no evidence that McClure distributed or stored drugs there [*Id.* at 6–7]. Defendant submits that McClure could have stored the pills in her vehicle or obtained the pills in the transaction observed by law enforcement just prior to the first controlled buy [*Id.*].

As an initial matter, defendant appears to raise the same arguments he made before the magistrate judge. In support of his suppression motion, he contended in his brief that neither law enforcement nor CI-1 observed any drug transactions at the residence [Doc. 80, p. 10 (citing Doc. 36, pp. 8–9); Doc. 87, pp. 5–7]. Likewise, he argued before the magistrate judge that McClure could have had the pills in her vehicle, or in the case of the first controlled buy, obtained the pill in the initial transaction observed by law enforcement [*Id.*]. To the extent he attempts to reargue these same issues that were before the magistrate judge and addressed in the R&R, his objections are considered general objections that do

11

not sufficiently identify alleged errors in the R&R and will be overruled. *See Howard*, 932 F.2d at 509.

An affidavit in support of a search warrant "must contain facts that demonstrate 'a fair probability that evidence of a crime will be located on the premises of the proposed search.'" *United States v. Grant*, No. 21-3686, 2023 WL 119399, at *2 (6th Cir. Jan. 6, 2023) (quoting *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005)). The connection—or "nexus"—"between the residence and the evidence of criminal activity must be specific and concrete, not 'vague' or 'generalized.'" *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016) (quoting *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004)). "If the affidavit does not present sufficient facts demonstrating why the police officer expects to find evidence in the residence rather than in some other place, a judge may not find probable cause to issue a search warrant." *Id.* (citing *Carpenter*, 360 F.3d at 595).

"[A] nexus exists between a known drug dealer's criminal activity and the dealer's residence when some reliable evidence exists connecting the criminal activity with the residence." *Gunter*, 266 F. App'x at 419. As the R&R recognizes, however, a "'defendant's status as a drug dealer, standing alone,' will not 'give[ ] rise to a fair probability that drugs will be found in his home[.]'" *Jenkins*, 743 F. App'x at 642 (quoting *Frazier*, 423 F.3d at 532–33). "[I]f the affidavit fails to include facts that directly connect the residence with the suspected drug dealing activity, or the evidence of this connection is unreliable, it cannot be inferred that drugs will be found in the defendant's home—even if the defendant is a known drug dealer." *Brown*, 828 F.3d at 382. However, an affidavit

12

need not allege that "anyone ever purchase drugs directly from the [drug dealer's] residence" to support a finding of nexus. *Jenkins*, 743 F. App'x at 644. In fact, the Sixth Circuit has upheld warrants authorizing residential searches "despite only a limited connection between the residence and drug related activity." *Gunter*, 266 F. App'x at 419. While it is "unsettled how much additional evidence of drug activity is needed for a nexus to exist . . . [a]t a minimum," the Sixth Circuit has required evidence of drug transactions occurring "in or around the residence." *Grant*, 2023 WL 119399, at *3 (internal quotation marks omitted) (citing *Brown*, 828 F.3d at 383).

As the magistrate judge noted, evidence of a "direct line" of travel from a residence to the site of a drug transaction can support a finding of nexus [Doc. 80, p. 12]. Indeed, in cases where drug transactions occurred beyond the immediate vicinity of the residence, courts emphasize a "direct line" of travel from the residence to the site of the drug transaction as established by police surveillance. *See, e.g.*, *Brooks*, 2023 WL 7130780, at *4; *United States v. Miller*, 850 F. App'x 370, 374 (6th Cir. 2021); *United States v. Bucio-Cabrales*, 635 F. App'x 324, 334 (6th Cir. 2016); *Gunter*, 266 F. App'x at 419; *see also United States v. Houser*, 752 F. App'x 223, 225–26 (6th Cir. 2018). *Cf. Grant*, 2023 WL 119399, at *3 (finding the affidavit lacked sufficient nexus where it did not allege that the defendant dealt drugs from the residence "or that he even entered the building just before or after the controlled buy"). Those cases likewise suggest that there is no per se rule that criminal activity must be observed at or near the residence to give rise to a nexus. *See id.* Indeed, the Sixth Circuit has recognized that "[d]rug dealers cannot immunize themselves from [a] search of a residence used to store their supply simply by ensuring that

13

all drug deals take place in parking lots." *Miller*, 850 F. App'x at 374 (quoting *Jenkins*, 743 F. App'x 636).

Here, although the two controlled buys occurred away from the residence, each time law enforcement observed McClure enter her vehicle from the residence and followed her to the predetermined locations of the controlled buys [Doc. 36-1, pp. 4–5]. Before the first controlled buy, upon her arrival to the Walmart parking lot, officers observed McClure engage in what appeared to be a drug transaction with the occupant of another vehicle [*Id.* at 4]. Based on such observation, defendant seems to argue that there was not a "direct line" of travel and the magistrate judge improperly assumed that McClure had pills in her possession when she left the residence [Doc. 87, p. 6].

But defendant ignores the second controlled buy in which law enforcement followed McClure from the residence to the location of the drug transaction and directly back to the residence, with no stops in between [Doc. 36-1, p. 5]. Together, both controlled buys support the magistrate judge's finding that a "direct line" of travel exists in this case, which, contrary to defendant's position, provides reliable evidence connecting McClure's ongoing drug activity to the residence. *See United States v. Allen*, No. 21-4029, 2023 WL 34235, *4 (6th Cir. Jan. 4, 2023) (finding sufficient nexus where a detective surveilled the residence and saw the defendant, who was a known drug dealer, leave in an SUV and drive to the controlled buy, and later observed the same SUV outside the residence) (citing *Gunter*, 266 F. App'x at 419 and collecting other cases).

In addition to the two controlled buys, the magistrate judge further noted the affidavit related that Investigator Mashburn was involved in two additional controlled buys

with McClure in this "operation" and had purchased drugs from McClure in "multiple other operations" involving the sale of drugs [Doc. 80, p. 13 (citing Doc. 36-1, pp. 4–5)]. According to the affidavit, the second controlled buy with CI-1 was the "fourth time [Investigator Mashburn] had purchased drugs from [McClure] during [the] current operation" [Doc. 36-1, p. 5]. As the magistrate judge explained, Investigator Mashburn's knowledge of McClure's involvement in drug trafficking is another circumstance in the totality that supports a finding of nexus between McClure's drug dealing and the residence [Doc. 80, p. 13 (citing *Brooks*, 2023 WL 7130780, at *5)]. Finally, the magistrate judge also highlighted Investigator Mashburn's statement that, based on his training and experience, drug dealers store contraband in their residences relating to drug trafficking, as another circumstance in the totality [*Id.* at 12].

Altogether, the facts contained in the affidavit provide probable cause connecting the residence with drug trafficking [Doc. 87, p. 7]. In light of the above, defendant's objections are **OVERRULED**.

    **B.**    **Good Faith Exception**

Under the good faith exception to the exclusionary rule, "[i]n the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *United States v. Leon*, 468 U.S. 897, 926 (1984). The Court thus must decide "whether a reasonably well trained officer would have known that the search was illegal

15

despite the magistrate's decision." *Id.* at 923 n.23. The good faith exception does not apply in four situations:

> (1) when the affidavit supporting the search warrant contains a knowing or reckless falsity; (2) when the magistrate who issued the search warrant wholly abandoned his or her judicial role; (3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable; or (4) when the warrant is so facially deficient that it cannot reasonably be presumed valid.

*United States v. McPhearson*, 469 F.3d 518, 525 (6th Cir. 2006) (citing *Leon*, 468 U.S. at 922–23 n.23).

At issue in this case is the third limitation, which provides that evidence may not be admitted at trial if it was seized under a warrant that was issued on the basis of a "bare bones" affidavit; that is, an affidavit that merely "states suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *Id.* at 525–26 (quoting *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996)). The Sixth Circuit has found the good faith exception applicable in cases where the affidavit contained a minimally sufficient nexus between the illegal activity and the place to be searched. *Id.* at 526. If the reviewing court is "able to identify in the averring officer's affidavit some connection, regardless of how remote it may have been"—"some modicum of evidence, however slight"—"between the criminal activity at issue and the place to be searched," then the affidavit is not bare bones and official reliance on it is reasonable. *United States v. Laughton*, 409 F.3d 744, 749–50 (6th Cir. 2005). For the good faith exception to apply, "the officer's reliance on the magistrate's probable-cause determination . . . must be objectively reasonable." *Leon*, 468 U.S. at 922.

16

Defendant objects to the magistrate judge's finding that the good faith exception applies and argues that the affidavit lacks a concrete connection between the residence and drug trafficking [Doc. 87, pp. 8–9]. According to defendant, the affidavit only contemplates two off-premises drug transactions, and "[a]t best, McClure's status as a known drug dealer," leaving much to be desired [*Id.*].

The Court finds that the affidavit identifies a minimally sufficient nexus between drug dealing and the residence. *See id.* As discussed *supra*, law enforcement conducted two controlled buys with McClure to confirm that she was dealing drugs. Before both controlled buys, officers saw McClure leave the residence and drive to the predetermined locations where the drug transactions took place. After the second controlled buy, officers saw her directly return to the residence. Thus, even if the affidavit lacked sufficient probable cause for the magistrate judge to issue the search warrant, it contained more than sufficient indicia of probable cause for the officers who executed the search to reasonably rely on it. *See United States v. Westley*, No. 22-3356, 2023 WL 5377894, at *9 (6th Cir. Aug. 22, 2023) (finding the good faith exception applied where officers "conducted an investigation into [the defendant], including a controlled buy, [and] observing [the defendant] leave his residence to the buy location"); *Neal*, 2023 WL 1107895, at *1.

As a result, defendant's objection on this ground is **OVERRULED**.

IV. **Conclusion**

Accordingly, upon a careful and *de novo* review of the record and the law, the Court finds that the recommendations contained in the R&R are correct. Defendant's objections [Doc. 87] are **OVERRULED**. The Court **ACCEPTS in whole** the R&R [Doc. 80] and

17

incorporates it into this Memorandum Opinion and Order.  The Court hereby **DENIES** defendant's Motion to Suppress [Doc. 36].

  IT IS SO ORDERED.

              s/ Thomas A. Varlan
              UNITED STATES DISTRICT JUDGE